UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

―――――――――――――――――――――――――――――

TYANA MILLER & KENYA THOMAS,

                  Plaintiffs,

          -v-

CITY OF NEW YORK *et al.*,

                  Defendants.

17-CV-8593 (JPO)

OPINION AND ORDER

―――――――――――――――――――――――――――――

J. PAUL OETKEN, District Judge:

    A jury trial was held in this matter from September 6, 2022, through September 8, 2022. The jury returned a verdict for the Defendants on all counts. (*See* Dkt. No. 145.) Plaintiffs now move for judgment as a matter of law in their favor under Rule 50 of the Federal Rules of Civil Procedure, or in the alternative, for a new trial pursuant to Rule 59. For the reasons that follow, Plaintiffs' motion is denied.

**I.    Background**

    Familiarity with the background of this case is presumed, and the Court addresses only the aspects of its factual and procedural background relevant to the instant motions.

    Tyana Miller and Kenya Thomas commenced this action in 2017, alleging constitutional and state law violations against the City of New York and several individual New York Police Department ("NYPD") officers in connection with a February 2, 2017 search of a Brooklyn, New York residence. Summary judgment briefing narrowed the issues in the case to certain specific claims against two individual defendants, NYPD Officers Kamna and Penner: whether they detained and searched the Plaintiffs, both black women, in an unreasonable manner by forcing them to wait in the nude, including in the presence of persons of the opposite sex, for an

unreasonable amount of time; and whether Penner unreasonably searched the Plaintiffs, including searching them in the nude and performing a body cavity search, which would also constitute an assault and battery under New York law. Following a three-day trial in which nearly all the evidence consisted of testimony from Miller, Thomas, Penner, and Kamna — i.e., the parties — the jury returned a verdict for the Defendants on all of the claims.

Plaintiffs now move for judgment as a matter of law or in the alternative, a new trial on an even narrower theory of the case. Specifically, Plaintiffs contend that Miller is entitled to judgment as a matter of law against Penner because Penner caused Miller to become briefly exposed to the men in the room — her then-boyfriend, Ira Thomas, and Officer Kamna — when Penner helped Miller get dressed. Plaintiffs also contend that they both ought to receive a judgment against Penner because (1) there was no reasonable suspicion to perform any search on either Plaintiff, and (2) the searches were more invasive than a limited pat-down, as the subjects were nude during the search, or Penner had seen them in the nude prior to the search.

## II.     Legal Standards

### A.     Motion for Judgment as a Matter of Law Pursuant to Rule 50

"In reviewing a Rule 50 motion, a court may consider all the record evidence, but in doing so it 'must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence.'" *Cross v. N.Y.C. Trans. Auth.*, 417 F.3d 241, 247 (2d Cir. 2005) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150, 120 S. Ct. 2097, 147 L.Ed.2d 105 (2000) (citations omitted)). The movant's burden on a Rule 50 motion will be "particularly heavy after the jury has deliberated in the case and actually returned its verdict." *Id*. at 248. The Court must "give deference to all credibility determinations and reasonable inferences of the jury, and may not weigh the credibility of witnesses or otherwise

consider the weight of the evidence." *Bucalo v. Shelter Island Union Free Sch. Dist.*, 691 F.3d 119, 128 (2d Cir. 2012) (quotations and citation omitted).

Thus, in order to grant such a motion, "there must be 'such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture, or . . . such an overwhelming amount of evidence in favor of the movant that reasonable and fair-minded men could not arrive at a verdict against him.'" *Song v. Ives Laboratories, Inc.*, 957 F.2d 1041, 1046 (2d Cir. 1992) (quoting *Mattivi v. South African Marine Corp.*, 618 F.2d 163, 168 (2d Cir. 1980) (citation omitted)).

### B.   Motion for a New Trial Pursuant to Rule 59

After a jury trial and upon motion, a court may "grant a new trial on all or some of the issues—and to any party . . . ." Fed. R. Civ. Pr. 59(a)(1).  "A motion for a new trial should be granted when, in the opinion of the district court, 'the jury has reached a seriously erroneous result or . . . the verdict is a miscarriage of justice.'" *Song*, 957 F.2d at 1047 (quoting *Smith v. Lightning Bolt Productions, Inc.*, 861 F.2d 363, 370 (2d Cir. 1988) (citations omitted)).  Rule 59 motions differ from motions for a new trial pursuant to Rule 50 in two significant respects.  First, "[u]nlike judgment as a matter of law, a new trial may be granted even if there is substantial evidence supporting the jury's verdict." *DLC Mgmt. Corp. v. Town of Hyde Park*, 163 F.3d 124, 134 (2d Cir. 1998).  And second, while in considering a Rule 59 motion "a trial judge is free to weigh the evidence himself, and need not view it in the light most favorable to the verdict winner," *id*. at 133, courts grant Rule 59 motions only when the judge finds the jury's verdict to be "egregious" in light of the evidence presented at trial.  *Id.* at 134 (quotations and citations omitted).

### III. Discussion

#### A. Plaintiffs' Motion for Judgment as a Matter of Law or New Trial against Penner Based on her Search of Miller

In reaching its verdict, the jury plainly accepted Officer Penner's testimony and largely rejected that of Plaintiffs. Plaintiffs contend they are entitled to judgment as a matter of law because, even based on Penner's testimony, when she assisted Miller in getting dressed, she caused her to become exposed for a few seconds to men, namely, Officer Kamna and Ira Thomas, Miller's then-boyfriend. (*See* Dkt. No. 162 at 6.)

The actual record is less clear. At trial, Penner in fact testified that she did not "recall if there was an [other male] officer or not. I didn't notice." She then said that it was "possible" that a male officer was in the room but that she "was very focused on the task at hand." (Dkt. No. 148 at 143-1 – 143-11.) Speaking about Miller's boyfriend, Penner testified that while she noticed him in the room with Miller when she entered, she "did not pay attention to him after [her] initial notice of him" and that she was unaware whether he remained in the room when she dressed Miller and searched her upper body. (Dkt. No. 148 at 184-3 – 184-14.) In each case, Penner at most admitted that she did not specifically clear men from the room, and that it was "possible" that the men had remained and had seen Miller for "a couple of seconds." (*See, e.g.*, Dkt. No. 148 at 184-1, 185-3.) Her assertions fall short of the definitive record Plaintiffs claim.

Importantly, Plaintiffs' legal arguments and supporting evidence were presented to the jury, which found that Penner's search of Miller was reasonable. The Court properly instructed the jury on the governing standards of liability. Rule 50 imposes a high bar to disturbing a jury's verdict; the Court may overturn a jury's verdict only if the jury's findings "could only have been the result of sheer surmise and conjecture" or there is "such an overwhelming amount of

4

evidence in favor of the movant" such that reasonable people could not disagree. *Song*, 957 F.2d 1041 at 1046. That is not the case here.

Defendants further counter that Penner would be entitled to qualified immunity under this theory of liability. Qualified immunity shields government officials from lawsuits when "(a) the defendant's action did not violate clearly established law, or (b) it was objectively reasonable for the defendant to believe that his action did not violate such law." *Coggins v. Buonora*, 776 F.3d 108, 114 (2d Cir. 2015). Defendants "are entitled to qualified immunity under 42 U.S.C. § 1983 unless the unlawfulness of their conduct was clearly established at the time." *District of Columbia v. Wesby*, 138 S. Ct. 577, 581 (2018) (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)) (internal quotation marks omitted). "To be clearly established, a legal principle must be 'settled law', and it must clearly prohibit the officer's conduct in the particular circumstances before him." *Wesby*, 138 S. Ct. at 589–90 (quoting *Hunter v. Bryant*, 502 U. S. 224, 228 (1991) (*per curiam*)).

Plaintiffs contend that there is well-established case law rendering Penner's actions, if there were men in the room, clearly unconstitutional. Plaintiffs principally rely on *Gonzalez v. City of New York*, No. 01-CV-5584, 2006 WL 8435010 (E.D.N.Y. Jan. 3, 2006).

In *Gonzalez*, the plaintiff alleged that she had been awoken early in the morning by police while she was sleeping in the nude, forced out of bed, and then forced to remain nude in the presence of male officers for "nearly an hour" despite requesting permission to put on a nearby robe. *Id.* at *15–*16. The court in *Gonzalez* indeed recognized a "right to privacy in one's unclothed body . . . in the context of . . . search and seizure by the government." *Id.* at *16 (quoting *Poe v. Leonard*, 282 F. 3d 123, 136 (2d Cir. 2002). It also recognized that there is a heightened privacy interest when in the presence of persons of a different sex. *Id.* at *17

(explaining that "that the officers involved were of a different sex than Denise also weighs in favor" of finding a violation occurred and quoting *Canedy v. Boardman*, 16 F.2d 183, 185 (7th Cir. 1994) ("[I]t is generally considered a greater invasion[] to have one's naked body viewed by a member of the opposite sex.")). Plaintiffs therefore argue that *Gonzalez* establishes that absent a legitimate law enforcement reason, even a one- to two-second exposure to the opposite gender, whether before strangers or significant other, constitutes a clear Fourth Amendment violation.

Plaintiffs stretch *Gonzalez* too far. In full context, *Gonzalez* specifically concerned the police officers' *refusal* to allow the female plaintiff to put on clothes while detained in the presence of male officers. Specifically, the court held that "the Second Circuit's analysis in *Poe v. Leonard* clearly established the right, during the execution of a search warrant, to cover one's naked body upon request, where there is clothing nearby and such actions would not compromise officer safety or other legitimate government concerns." *Id.* at *17. *Gonzalez* clearly establishes that the police cannot refuse a plaintiff's request for clothing — such as Miller's request to clothe her lower body — absent a legitimate law enforcement reason. Plaintiffs' other cases also support this reading of the law. *See, e.g. Daniels v. City of New York*, No. 16 Civ. 190, 2018 WL 4119191, at *8 (E.D.N.Y. Aug. 29, 2018) (denying summary judgment where there was "a genuine dispute of material fact as to whether there was a 'proper law-enforcement interest' advanced by Defendants' denial of Daniels's alleged repeated requests to change or retrieve more clothing"); *Scott v. City of New York,* No. 16-CV-834, 2020 WL 208915, at *10 (E.D.N.Y. Jan. 14, 2020) ("Fernandez asserts that Muller, Vanderschuyt, and a third officer entered her room and remained there for several minutes while Fernandez was topless and, even though she had a shirt in her hand, did not ask, tell, or permit her to put it on.").

*Gonzalez*, like Plaintiffs' other cases, also concerns a prolonged period of forced nudity. 2006 WL 8435010 at *16 ("[T]he record does not reveal a single reason why the officers could not have handed Denise a robe, or some other item to cover her body, at any time during the hour she alleges she was detained in her bedroom."); *see also Daniels*, 2018 WL 4119191 at *8 (noting the police failed to explain "why they waited nearly five hours to provide her with any clothing"). Other cases hold that officers may require subjects to stand briefly in the nude to support a legitimate law enforcement interest. *See, e.g.*, *L.A. County v. Rettele*, 550 U.S. 609, 614 (2007).

Considered in light of this case law, Plaintiffs' reading of *Gonzalez* would place police officers into an impossible situation. The case law clearly establishes that police officers may not refuse a subject's request to get dressed, absent a legitimate law enforcement reason. But Plaintiffs would also have it be a violation to *grant* a subject's request to get dressed, if such a process involved even one second of exposure. It is perhaps true that Penner could have affirmatively cleared the room of men before assisting Miller in getting dressed — if she determined that this would not have endangered her, anyone in the vicinity, or the ensuing search in any way. But Plaintiffs identify no case law clearly establishing such a requirement, nor any case law holding that one to two seconds of exposure to the opposite sex constitutes a *per se* constitutional violation. *See Scott*, 2020 WL 208915 at *11 ("[T]he court has been unable to locate any authority, binding or persuasive, finding a constitutional violation where officers require an individual to stand nude for only a brief period of time in a location where the officers were actually conducting a lawful search.").

For the foregoing reasons, Penner's actions, as she described them, did not violate clearly established law and she is entitled to qualified immunity. *See, e.g., Scott*, 2020 WL 208915 at

\*11 (granting one police officer, who was present while a woman was briefly topless and did not aid or allow her to dress, qualified immunity because the law does not clearly establish that a subject's brief nudity during a search is unconstitutional).

Plaintiffs' response that Defendants waived Penner's qualified immunity defense is unavailing. Defendants raised the issue of qualified immunity in their answer, before the Court in discussions over jury instructions, and in their response to Plaintiffs' Rule 50 motion. (*See* Dkt. No. 48 at ¶ 50; Dkt. No. 156 at 275-23, 304-11; Dkt. No. 148 at 246-4.) They did not waive it by choosing not to brief it as to Penner at the summary judgment stage. "Where summary judgment is inappropriate, and the case proceeds to trial, the defense of qualified immunity may be presented to the jury or may be decided by the court in a motion for judgment as a matter of law." *Blissett v. Coughlin,* 66 F.3d 531, 538 (2d Cir. 1995). Here, the claims that Plaintiffs argued at summary judgment and during the trial differed significantly from the claims and facts that they argue now; on the previous allegations — that Penner conducted a body cavity search on Miller — qualified immunity would have been inappropriate. *See Stephenson v. Doe*, 332 F.3d 68, 77 (2d Cir. 2003) (holding that qualified immunity was not waived despite not being raised at summary judgment because "in order to reach Dingler's claim of qualified immunity the jury had to resolve various factual disputes in his favor."). Penner is entitled to qualified immunity on this claim. Accordingly, there is also no basis to grant Plaintiffs a new trial on these claims. Plaintiffs' Rule 50 and Rule 56 motions must be denied.

### B.     Plaintiffs' Motion for a Judgment as a Matter of Law or New Trial as to Penner's Search of Both Plaintiffs

Plaintiffs' second claim is that both searches of the Plaintiffs were presumptively unconstitutional, as Penner "had no reasonable suspicion to perform a search on either of the plaintiffs." This iteration of their claim falls short. The February 2, 2017 search of the

apartment where Penner searched Miller and Thomas occurred pursuant to a lawfully issued search warrant.  (*See* Dkt. No. 72 at 5-7.)  This warrant carried with it the right to perform a limited pat-down search of those found at the residence.  *See United States v. Jaramillo*, 25 F.3d 1146, 1151 (2d Cir. 1994) ("Circumstances giving rise to sufficiently 'specific and articulable facts' to warrant the stop and patdown of an individual include . . . an individual's ownership or occupancy of private premises for which a search warrant has been obtained.")  Plaintiffs' reliance on cases from public premises or entirely different contexts, such as *Terry* stops, is misplaced.  (*See* Dkt. No. 152 at 10.)  To the extent that Plaintiffs claim any search of Thomas or Miller violated the constitution, their argument is unpersuasive.

Plaintiffs also offer the argument that, as neither Miller nor Thomas was fully clothed, there was no conceivable reason to perform a limited pat-down search.  They argue that therefore the search was unwarranted, and by the very nature of Miller's and Thomas's states of undress, more invasive.  (*See* Dkt. No. 152 at 11.)

Again, Penner's trial testimony is instructive.  While Plaintiffs testified otherwise, Penner described both Plaintiffs as either fully or partially clothed.  Penner testified that Miller was wearing a t-shirt when she entered, and that Penner performed the second search, which would have included her search of Thomas, on two women both wearing T-shirts and basketball shorts or other similar bottoms.  (Dkt. No. 148 at 175-179.)  Penner also testified that she only searched Miller's upper body, as she "didn't need to" search her lower body after having helped Miller put on leggings.  (Dkt. No. 148 at 170-173.)  Penner additionally offered an explanation for why a pat-down search might be necessary, even if someone was wearing just "a thin white T-shirt," saying "I've encountered people who taped things, held things under their armpits, under the

9

clothes that I have felt.  Just because it's like a T-shirt doesn't mean they are not hiding anything."  (Dkt. No. 148 at 146-147.)

Penner therefore described a typical pat-down search over the Plaintiffs' clothing and offered justification for the search.  Miller and Thomas gave very different accounts of what they were wearing and of the invasiveness of Penner's search.  Neither side, however, offered documentary evidence or the testimony of witnesses other than the parties.  As a result, the jury's verdict could only have been based on their determination of the credibility of the witnesses and whether, in their view, the Plaintiffs had met their burden of proof.  In asking the Court to overturn their verdict, therefore, Plaintiffs ask the Court to usurp the jury's role and overturn their credibility determinations.  This the Court may not do.  *See Bucalo v. Shelter Island Union Free Sch. Dist.*, 691 F.3d 119, 128 (2d Cir. 2012) (explaining that on a Rule 50 motion, the Court must "give deference to all credibility determinations and reasonable inferences of the jury, and may not weigh the credibility of witnesses or otherwise consider the weight of the evidence.").

Plaintiffs also move for a new trial under Rule 59.  On a Rule 59 motion, unlike a Rule 50 motion, the trial judge has more freedom to "weigh the evidence and the credibility of witnesses and need not view the evidence in the light most favorable to the verdict winner."  *Raedle v. Credit Agricole Indosuez*, 670 F.3d 411, 418 (2d Cir. 2012).  But this discretion has limits.  "Trial judges must exercise their ability to weigh credibility with caution and great restraint."  *Id.*  A judge "should rarely disturb a jury's evaluation of a witness's credibility," *DLC Management Corp. v. Town of Hyde Park*, 162 F. 3d 124, 134 (2d Cir. 1998), and may not "freely substitute his or her assessment of the credibility of witnesses for that of the jury simply because the judge disagrees with the jury." *United States v. Laundau*, 155 F.3d 93, 104 (2d. Cir. 1998)).  Accordingly, where, as here, "a verdict is predicated almost entirely on the jury's

10

assessments of credibility, such a verdict generally should not be disturbed except in an egregious case, to correct a seriously erroneous result, or to prevent a miscarriage of justice." *Raedle*, 670 F.3d at 418–19.  This is not such a case, for all the reasons expounded above. Plaintiffs' motion for a new trial is denied.

## IV. Conclusion

For the foregoing reasons, Plaintiffs' motion for a judgment as a matter of law or in the alternative, a new trial, is DENIED.

The Clerk of Court is directed to close the motions at docket numbers 152 and 153.

SO ORDERED.

Dated: January 5, 2023
New York, New York

_____
J. PAUL OETKEN
United States District Judge